`UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
WILLIE CHATMON,

                Petitioner,

                                    **REPORT AND**

      -against-                    **RECOMMENDATION**

J. MANCE, Superintendent, Marcy        07 Civ. 9655 (KMK) (GAY)
Correctional Facility,

                Respondent.
-------------------------------------------------------X

TO THE HONORABLE KENNETH M. KARAS, United States District Judge

      On November 18, 2003, a Westchester County jury convicted petitioner Willie Chatmon ("petitioner" or "defendant") of assault in the second degree.  Petitioner's conviction stemmed from an altercation between petitioner and his neighbor, Septivol Bolt, on February 19, 2003 in Yonkers, New York.  The trial court sentenced petitioner as a second violent felony offender to six years imprisonment, followed by five years of post-release supervision. On February 13, 2009, petitioner was released on parole from Marcy Correctional Facility.  On or about February 17, 2009, petitioner violated his conditions of parole and was reincarcerated.  On or about February 17, 2010, petitioner was released from Bare Hill Correctional Facility and is presently incarcerated at the Franklin County Jail in Malone, New York.

      Presently before this Court is petitioner's *pro se* Petition for a Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, I respectfully recommend that the Court deny the petition in its entirety.[1]

---

      [1] My conclusions are based upon my evaluation of petitioner's claims on their merits, without regard to the issue of exhaustion.  See 28 U.S.C. § 2254(b)(2).

## I. PROCEDURAL HISTORY

At a pretrial *Sandoval* hearing, the prosecution sought permission to ask defendant about four criminal convictions and the underlying facts of each: a 1984 conviction for second degree attempted robbery; a 1986 conviction for second degree robbery; a 1984 conviction for fourth degree criminal mischief; and a 2002 conviction for third degree attempted rape (13-17).[2]  The trial court precluded mention of the rape conviction, and allowed testimony regarding the other three convictions but precluded further testimony about their underlying facts with the exception of the criminal mischief conviction (23-24).  The prosecution also sought to elicit testimony concerning four prior bad acts: defendant's conduct underlying his 1984 arrest for second degree obstructing governmental administration; his conduct underlying his 1984 arrest for attempted arson and burglary; his conduct underlying his 1984 arrest for assault and robbery; and his conduct underlying his 1985 arrest for assault (17-20).  The trial court precluded reference to all but one: the court allowed the prosecution to ask defendant about his conduct underlying his 1984 arrest for attempted arson and burglary, including threats he made to the victim and a statement he made to police (18-19, 25-26)

The jury returned its verdict on November 18, 2003.  On or about February 27, 2004, plaintiff's counsel filed a CPL 330.30 motion to set aside the verdict on the grounds, *inter alia*, that: the jury was given improper readbacks; the jury was not initially instructed that it was improper to deliberate until the close of trial; the prosecution committed reversible error during summation by shifting the burden to defendant; the

---

[2] Numbers in parentheses refer to pages from the trial transcript.

trial court's *Sandoval* rulings were improper and prejudicial; and the chain of custody was broken for three pieces of evidence.  <u>See</u> Respondent's Memorandum of Law and Exhibits, Exh. 2.[3]  The trial court denied defense counsel's motion on June 22, 2004. <u>See</u> Exh. 4.

Petitioner, by and through counsel, timely appealed the judgment of conviction to the Appellate Division, Second Department, on the grounds that: (1) the trial court's *Sandoval* rulings were erroneous and grossly unfair; (2) petitioner was denied a fair trial because the trial court forced him to proceed through the jury selection clothed in prison garb; (3) petitioner was denied a fair trial because the prosecution was allowed to bolster the testimony of its sole witness with improper hearsay testimony; (4) petitioner was denied a fair trial because the trial court refused to give a curative instruction or declare a mistrial after the prosecution elicited testimony from a police witness concerning a statement allegedly made by petitioner but not noticed pursuant to CPL 710.30; and (5) petitioner was denied a fair trial due to prosecutorial misconduct during trial and summation.  <u>See</u> Brief for Defendant-Appellant, Exh. 5, at 15-55.  The Second Department, by Decision and Order dated July 25, 2006, affirmed the judgment of conviction.  <u>See</u> <u>People v. Chatmon</u>, 31 A.D.3d 781, 818 N.Y.S.2d 481 (2d Dep't 2006). The New York Court of Appeals denied petitioner leave to appeal on November 7, 2006. <u>See</u> <u>People v. Chatmon</u>, 7 N.Y.3d 901, 860 N.E.2d 72, 826 N.Y.S.2d 610 (2006).

On or about December 27, 2006, petitioner filed a *pro se* motion to vacate the judgment of conviction pursuant to section 440.10 of the New York Criminal Procedure

---

[3] Hereinafter, all citations to "Exh. __," unless otherwise noted, refer to exhibits attached to Respondent's Memorandum of Law.

Law ("CPL"), on the grounds that: (1) his federal constitutional right to a fair trial was violated because the trial court allowed the prosecution to ask defendant about his conduct underlying his 1984 arrest for attempted arson and burglary; (2) the prosecution's questioning about said prior bad act violated CPL §§ 160.50, 160.60 and 190.25(4) and N.Y. Penal Law § 215.70; and (3) his trial counsel was ineffective because he (a) failed to "guard against inadmissible evidence," (b) failed to call as an expert witness a doctor who treated petitioner's knee injury, (c) failed to introduce petitioner's grand jury testimony as evidence that he could not bend his left knee; (d) failed to call petitioner's mother and ex-girlfriend as "fact witnesses;" (e) failed to introduce photographic evidence of the location where the incident occurred; and (f) failed to investigate the case and prepare for trial.  See Notice of Motion to Vacate Judgement, Exh. 8.  By Decision and Order dated June 25, 2006 (Supreme Court, Westchester County, J. Walker), petitioner's motion was denied in its entirety.  See Exh. 10.  On September 12, 2007, the Second Department denied petitioner's request for leave to appeal the denial of his 440.10 motion.  See Exh. 12.

On or about October 11, 2007, petitioner filed the instant Petition for a Writ of Habeas Corpus, wherein he asserts the following grounds for habeas relief: (1) the trial court's *Sandoval* rulings deprived him of a fair trial; (2) petitioner was denied a fair trial because the trial court refused to give a curative instruction or declare a mistrial after the prosecution elicited testimony from a police witness concerning a statement allegedly made by petitioner but not noticed pursuant to CPL 710.30; (3) petitioner was denied a fair trial due to prosecutorial misconduct during trial and summation; (4) the trial court allowed the prosecution to ask petitioner about his conduct underlying his

4

1984 arrest for attempted arson and burglary, in violation of petitioner's rights of privacy

and due process; and (5) petitioner's trial counsel was ineffective because he (a) failed

to "guard against inadmissible evidence," (b) failed to call as an expert witness a doctor

who treated petitioner's knee injury, (c) failed to introduce petitioner's grand jury

testimony as evidence that he could not bend his left knee; (d) failed to call petitioner's

mother and ex-girlfriend as "fact witnesses" who would have testified that petitioner

could not bend his left knee; (e) failed to introduce photographic evidence of the location

where the incident occurred; and (f) failed to investigate the case and prepare for trial.

## II.  STANDARD OF REVIEW

"[I]t is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions.  In conducting habeas review, a federal court is

limited to deciding whether a conviction violated the Constitution, laws, or treaties of the

United States."  Estelle v. McGuire, 502 U.S. 62, 68 (1991).  See 28 U.S.C. § 2254(a).

Subsequent to the enactment of the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"), which amended 28 U.S.C. § 2254, a federal court may not grant

habeas relief for any claim adjudicated on the merits in state court unless the petitioner

establishes, in pertinent part, that the state court decision "was contrary to, or involved

an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  A state court's decision

is "contrary to" clearly established Federal law if (1) "the state court arrives at a

conclusion opposite to that reached by [the Supreme Court of the United States] on a

question of law" or (2) "the state court confronts facts that are materially

5

indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that reached by the Supreme Court of the United States]."  See Williams v. Taylor, 529 U.S. 362, 405 (2000).

As to the "unreasonable application" prong, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  See id. at 411.  A state court decision involves an "unreasonable application" of Federal Supreme Court precedent if (1) "the state court identifies the correct legal rule from [Federal Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or (2) "the state court either unreasonably extends a legal principle from [Federal Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  See id. at 407.

### III. *SANDOVAL* RULINGS

Petitioner claims that he was deprived of a fair trial due to the trial court's *Sandoval* rulings.  Generally, rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of a constitutional violation, unless petitioner meets his "heavy burden" of establishing that the evidentiary error constituted a deprivation of his right to a fair trial or due process.  See Roberts v. Scully, 875 F. Supp. 182, 189 (S.D.N.Y. 1995).  In order to establish that a constitutional violation has occurred as a result of the erroneous admission of evidence, petitioner must demonstrate that: (1) the evidence was in fact admitted erroneously; and (2) "the erroneously admitted evidence,

6

viewed  objectively in light of the entire record before the jury, was sufficiently material

to provide the basis for conviction or to remove a reasonable doubt that would have

existed on the record without it."  Schurman v. Leonardo, 768 F. Supp. 993, 1001

(S.D.N.Y. 1991) (quoting Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985)).  In sum, the

erroneously admitted evidence must have been "crucial, critical, highly significant."  Id.

It is well-settled under New York law that a defendant who chooses to testify may

be cross-examined about prior criminal acts that bear logically on his credibility.  People

v. Sandoval, 34 N.Y.2d 371, 314 N.E.2d 413, 357 N.Y.S.2d 849 (1974).  In determining

whether to admit evidence of a defendant's prior "bad acts," the court must balance the

"probative worth of evidence of prior specific criminal, vicious or immoral acts on the

issue of the defendant's credibility on the one hand, and on the other the risk of unfair

prejudice to the defendant."  Id. at 375.  "The balancing under the prejudice vs.

probative value test, state or federal, is left to the sound discretion of the trial judge."

Green v. Herbert, No. 01 Civ.11881 (SHS) (AJP), 2002 WL 1587133, at *15 (S.D.N.Y.

July 18, 2002) (citing cases).

Here, during the *Sandoval* hearing, the trial court balanced the competing

concerns and precluded (1) mention of petitioner's 2002 conviction for third degree

attempted rape, (2) testimony about the underlying facts of both robbery convictions and

(3) reference to petitioner's conduct underlying his 1984 arrest for second degree

obstructing governmental administration, his 1984 arrest for assault and robbery and his

1985 arrest for assault.  On the other hand, the trial judge allowed petitioner to be cross-

examined about: (1) the fact that he had been convicted in 1984 for second degree

attempted robbery, in 1986 for second degree robbery and in 1984 for fourth degree

7

criminal mischief; (2) the facts underlying his conviction for criminal mischief (smashing the windows of his mother's car with a tire iron); and (3) his conduct underlying his 1984 arrest for attempted arson and burglary (petitioner allegedly broke into his mother's house and stole jewelry, then allegedly poured gasoline inside the house, lit a match and threatened to burn down the house).

In the first instance, the trial court did not abuse its discretion under state law in allowing this impeachment.  As the New York Court of Appeals stated in *Sandoval*, "t]o the extent ... that the prior commission of a particular crime of calculated violence or of specified vicious or immoral acts significantly revealed a willingness or disposition on the part of the particular defendant voluntarily to place the advancement of his individual self-interest ahead of principle or of the interests of society, proof thereof may be relevant to suggest his readiness to do so again on the witness stand. A demonstrated determination deliberately to further self-interest at the expense of society or in derogation of the interests of others goes to the heart of honesty and integrity.  See Sandoval, 314 N.E.2d at 417-18.  Furthermore, even if the impeachment evidence was erroneously admitted, it was not sufficiently prejudicial so as to interfere with petitioner's constitutional right to a fair trial.  In summation, the prosecution clarified that it had questioned petitioner about his prior bad acts only as "a way to judge his credibility" and "[a]bsolutely not" to show him as a "bad person" (577).  Additionally, the trial court instructed the jury that "such prior conviction or criminal conduct are not evidence of the defendant's guilt in this case, or evidence that the defendant is a person who is [ ] disposed to commit crimes.  You're permitted to consider such [ ] convictions or conducts [ ] only to evaluate the defendant's truthfulness" (594).

8

In sum, not only was the trial court's *Sandoval* ruling proper, but any alleged error clearly did not rise to a the level of a constitutional violation.  Further, on direct appeal, the Appellate Division denied petitioner's challenge to the *Sandoval* rulings;  petitioner has failed to demonstrate that the Second Department's adjudication of the *Sandoval* issue on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law.  Accordingly, I conclude, and respectfully recommend, that petitioner's claim for habeas relief on said ground is without merit and must be dismissed.

## IV.  PROSECUTION'S INQUIRY VIOLATED NEW YORK SEALING STATUTES

Petitioner claims the prosecution violated his rights of privacy and due process by questioning him about his conduct underlying his 1984 arrest for attempted arson and burglary, because the prosecution's questioning about said prior bad act violated CPL §§ 160.50, 160.60 and 190.25(4) and N.Y. Penal Law § 215.70.  Petitioner specifically alleges that the prosecutor improperly questioned him about the facts underlying a dismissed prosecution for his burglary and attempted arson of his mother's house on June 20, 1984 because those records were sealed.[4]  The trial court rejected this argument on the merits in its decision denying petitioner's CPL 440.10 motion; the Appellate Division subsequently denied leave to appeal therefrom.

Petitioner's arguments are misplaced.  The prosecution sought and received the court's permission to inquire into the underlying facts of the attempted arson and

---

[4]  The prosecution was dismissed when petitioner's mother refused to testify before the grand jury.

burglary.  Thus, the prosecution's questioning was done in the lawful discharge of her

duties and in accordance with the court's *Sandoval* ruling.  As discussed above, the trial

court's *Sandoval* ruling was proper.  In any event, petitioner has failed to demonstrate

that the trial court's adjudication of the issue on its merits "was contrary to, or involved

an unreasonable application of, clearly established Federal law.  Accordingly, I

conclude, and respectfully recommend, that petitioner's claim for habeas relief on said

ground is without merit and must be dismissed.


## V.  TESTIMONY CONTRARY TO 710.30 NOTICE

Petitioner contends that he was denied his right to a fair trial because a police

witness's testimony regarding the substance of petitioner's statement to the police was

materially different from the statement of petitioner that had been noticed pursuant to

CPL 710.30.  According to the 710.30 notice, the prosecution intended to introduce, in

sum and substance, the following statement made by petitioner to the police: "And I

know why you are here; he was shoveling snow on my car.  And I told him to stop and

he ignored me and so I took the shovel and hit him with it" (375).  At trial, Officer

Sullivan testified as follows: "He said to him, 'I know why you're here.'  And we asked –

and I asked him, my partner also, 'Why is that?' and he said 'I hit the gentleman

downstairs.  And I hit him in the back of the head'" (372).  Defense counsel immediately

objected and the trial judge called for a side bar (372).  After discussion with counsel,

the trial judge sustained defense counsel's objection, told the jury to disregard the

testimony that petitioner stated "I hit him in the back of the head" and struck that phrase

from the record (378).  The prosecution then continued its direct examination of Officer

Sullivan:

> Q.  Officer, do you remember the defendant making a statement to you?
>
> A.  He did.
>
> Q.  And do you remember what that statement was?
>
> A.  The exact words?
>
> Q.  Yes.
>
> A.  Off-hand, no.  I can review my police report.

(379).  After refreshing his recollection, Officer Sullivan testified that petitioner's exact words were "He was downstairs shoveling snow and I told him to stop shoveling snow onto my car.  And he ignored me so I hit him" (379-80).

Petitioner has failed to demonstrate how Officer Sullivan's initial testimony violated his rights under the Constitution or deprived him of a fundamentally fair trial.  In response to defense counsel's objection, the court fashioned an appropriate and adequate remedy: the court struck the offending verbiage and instructed the jury to disregard it.  "We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions . . . ." Foster v. Miller, No. 04 Civ. 7990 (BSJ)(JCF), 2007 WL 1893726, at *2 (S.D.N.Y. June 29, 2007) (quoting Greer v. Miller, 483 U.S. 756, 767 (1987)).  Coupled with Officer Sullivan's subsequent clarification, the jury was clearly apprised that petitioner's statement to the police was, in sum and substance, that he took the shovel and hit the victim with it, consistent with his statement in the 710.30 notice.  The challenged testimony thus did

11

not deprive petitioner of a fundamentally fair trial.  Further, the Appellate Division's

decision rejecting this claim was not contrary to, nor did it amount to an unreasonable

application of, federal law as established by the Supreme Court.  Accordingly, I

conclude, and respectfully recommend, that petitioner is not entitled to habeas relief on

this claim.


## VI.  PROCEDURAL DEFAULT

Federal habeas corpus review of a state court's denial of a state prisoner's

federal constitutional claim is barred if the state court's decision rests on an

independent and adequate state procedural ground, unless the petitioner can

demonstrate cause for the procedural default and actual prejudice resulting from the

alleged constitutional violation, or show "that failure to consider the claims will result in a

fundamental miscarriage of justice."  See Coleman v. Thompson, 501 U.S. 722, 750

(1991).  See also Lee v. Kemna, 534 U.S. 362, 375 (2002).  Where a state court has

expressly relied on a procedural default, federal habeas review is foreclosed even if the

state court also addressed the merits of the federal claim.  See Green v. Travis, 414

F.3d 288, 294 (2d Cir. 2005).

A procedural bar is "adequate" if it is "based on a rule that is firmly established

and regularly followed by the state in question."  Monroe v. Kuhlman, 433 F.3d 236, 241

(2d Cir. 2006) (internal quotation and citation omitted).  Further, the adequacy of a state

procedural bar must be examined in the context of "the specific circumstances

presented in the case, an inquiry that includes an evaluation of the asserted state

interest in applying the procedural rule in such circumstances."  See Cotto v. Herbert,

331 F.3d 217, 240 (2d Cir. 2003).  To this end, the Second Circuit has set forth the

following "guideposts":

> (1) whether the alleged procedural violation was actually relied on in the
> trial court, and whether perfect compliance with the state rule would have
> changed the trial court's decision; (2) whether state caselaw indicated that
> compliance with the rule was demanded in the specific circumstances
> presented; and (3) whether petitioner had "substantially complied" with the
> rule given "the realities of trial," and, therefore, whether demanding perfect
> compliance with the rule would serve a legitimate governmental interest.

Id. (quoting Lee, 534 U.S. at 381-85).

A.  Prosecutorial Misconduct

In his third ground for habeas relief, petitioner alleges that he was denied a fair

trial due to prosecutorial misconduct during trial and summation.  Petitioner presented

this argument to the Second Department in Point V of his brief on direct appeal; the

Second Department affirmed petitioner's judgment of conviction and stated, *inter alia*:

> The defendant's contentions raised in Points I and IV, and her [sic]
> contention in Point V that the prosecutor's summation shifted the burden
> of proof, are without merit, and his remaining contentions are unpreserved
> for appellate review.

See People v. Chatmon, 31 A.D.3d 781.  Thus, the Second Department evaluated the

merits of petitioner's allegation that the prosecutor's summation shifted the burden of

proof but rejected the balance of petitioner's prosecutorial misconduct argument on New

York State procedural grounds.

1.  *"Unpreserved" allegations*

The Second Department rejected the bulk of petitioner's prosecutorial

misconduct claims as "unpreserved."  Because this language in no way implicated the

merits of petitioner's claims, it is clear that the Appellate Division's dismissal of the bulk

13

of petitioner's prosecutorial misconduct claims rested on an "independent" state procedural ground.  Under New York law, in order to preserve his claims of prosecutorial misconduct, petitioner was required to object contemporaneously at trial.  See N.Y. Crim. Proc. L. §470.05(2).  The record here reveals that, with the exception of petitioner's claim of burden-shifting (573), defense counsel did not preserve petitioner's prosecutorial misconduct claims.  The Second Circuit has noted that federal courts "have observed and deferred to New York's consistent application of its contemporaneous objection rules."  See Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999).  Thus, New York's contemporaneous objection rule is "adequate" to support the Appellate Division's decision.

Because there is an adequate and independent finding by the Appellate Division that petitioner procedurally defaulted on the bulk of the prosecutorial misconduct claims he now asserts as grounds for habeas relief, petitioner must demonstrate in his habeas petition "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  See Coleman, 501 U.S. at 750.  Petitioner, however, has made no attempt to show cause or prejudice, and there is no indication that this Court's failure to address the merits of the unpreserved prosecutorial misconduct claims would result in a fundamental miscarriage of justice.  Accordingly, I conclude that petitioner's procedural default bars federal review of the bulk of his prosecutorial misconduct claims.

2.  *Remaining allegation*

Petitioner contends that he was deprived of a fair trial because certain of the

14

prosecutor's statements in her summation improperly shifted the burden of proof. Petitioner specifically complains of two passages in the prosecutor's summation:

- "How do we know that's not true; he hit him with the shovel?  Well, first of all, the first thing Mr. Bolt does is he tells his wife I got hit with a crowbar.  The second thing he does is he calls 911 and says he got hit with a crowbar.  Did he make that up?  When did he make it up?  When did he make up this crowbar thing?  And why?  What benefit does it have for Mr. Bolt to make up a crowbar?  Why?  Where?  Right when it happened?  It does not make any sense.  He tells you he was hit with a crowbar because he was hit with a crowbar.  *The defendant has to say what he says* (570-71) (emphasis added).

- "Ladies and gentlemen, the defense here is, we're struggling with a shovel because the victim hit me with the shovel first.  And I am justified in struggling with him and he hit his head; or something like that.  And that is the defense here.  You have to believe that to acquit the defendant. You are going to be – you are going to hear a lesser included offense that the Court has submitted to you which is an Assault in the Third Degree.  I am going to ask you to reject that charge, okay.  *That charge is if you believe that the defendant – if you believe the defendant's story, you can consider that charge*" (572-73) (emphasis added).

The trial court overruled defense counsel's objection to the first passage but immediately reminded the jury that "[n]othing that counsel may say in their opening statements, in their closing statements is evidence in this case" and that the jury's

deliberations would be guided by the evidence and the Court's instructions on the law (571-72).  The trial court also denied defense counsel's request for a mistrial in response to the second passage, and reminded counsel (during the bench discussion) that the Court would instruct the jury as to the burden of proof, reasonable doubt and presumption of innocence (573-75).

In order to obtain habeas relief on the ground of prosecutorial misconduct, petitioner must demonstrate that he suffered actual prejudice in that the prosecutor's conduct "had a substantial and injurious effect or influence in determining the jury's verdict."  Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994).  Petitioner must show that the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974).  In deciding whether the egregiousness of the prosecutor's comments justifies habeas relief, the court must examine "the cumulative effect of the totality of the challenged statements, when viewed in context."  Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990).  In the Second Circuit, this inquiry includes consideration of three factors: (1) the severity of the prosecutor's misconduct, (2) the steps taken by the trial court to remedy any prejudice and (3) the certainty of the conviction absent the prejudicial conduct."  Bentley, 41 F.3d at 824.

Here, in the first instance, the prosecutorial statements in question did not, on their face, improperly shift the burden of proof to defendant.  Rather, the prosecutor's comments addressed petitioner's credibility, and invited the jury to disbelieve petitioner in favor of the contradictory testimony of the prosecution's witnesses.  In any event, considering the totality of the circumstances, the prosecutor's remarks did not cause

16

petitioner substantial prejudice.  When the prosecution resumed summation after

defense counsel's request for a mistrial and the bench discussion, she immediately

stated: "Ladies and gentlemen, the burden to prove the defendant's guilt is on me.  It

never shifts to the defense.  I accept this burden.  I must prove the defendant guilty.

Just so we're clear on that" (575).  More importantly, the trial court ultimately instructed

the jury as follows:

> Throughout these proceedings, the defendant is presumed to be
> innocent.  As a result, you must find the defendant not guilty unless on the
> evidence presented at this trial, you conclude that the People have proven
> the defendant's guilt beyond a reasonable doubt.
> In determining whether the People have satisfied their burden of
> proof, the defendant's guilt beyond a reasonable doubt, you may consider
> all of the evidence presented, whether by the People or by the defendant.
> In doing so, however, remember that even though the defendant
> introduced evidence, the burden of proof remains with the People.
> The defendant is not required to prove that he is not guilty.  In fact,
> the defendant is not required to prove or disprove anything.  So to the
> contrary, the People have the burden of proving the defendant's guilt
> beyond a reasonable doubt.  That means before you can find the
> defendant guilty of a crime, the People must prove beyond a reasonable
> doubt every element of the crime, including the defendant is the person
> who committed the crime.  The burden never shifts from the People to the
> defendant.
> If the People fail to satisfy their burden of proof, you must find the
> defendant not guilty.  If the People satisfied their burden of proof, you
> must find the defendant guilty (599-600).

"[T]he Court must presume that the jury is capable of understanding and

following limiting instructions provided during the course of and at the conclusion of the

trial with regard to the manner in which it may use evidence."  United States v. DeYian,

No. 94 Cr. 719, 1995 WL 368445, at *11 (S.D.N.Y. June 21, 1995).  See also Weeks v.

Angelone, 528 U.S. 225, 234 (2000) (presumption that jury will follow Court's

instructions).  Under the deferential AEDPA review standard, viewing the prosecutor's

comments in the totality of the circumstances, the Appellate Division's decision was neither contrary to, nor an unreasonable application of, federal law.  Accordingly, I conclude, and respectfully recommend, that petitioner's claim for habeas relief on the ground that the prosecutor's statements in her summation improperly shifted the burden of proof is without merit and must be dismissed.

      B.  <u>Ineffective Assistance of Trial Counsel</u>

      Petitioner asserts, as his fifth ground for habeas relief, that his trial counsel was ineffective because he (a) failed to "guard against inadmissible evidence," (b) failed to call as an expert witness a doctor who treated petitioner's knee injury, (c) failed to introduce petitioner's grand jury testimony as evidence that he could not bend his left knee; (d) failed to call petitioner's mother and ex-girlfriend as "fact witnesses" who would have testified that petitioner could not bend his left knee; (e) failed to introduce photographic evidence of the location where the incident occurred; and (f) failed to investigate the case and prepare for trial.  Petitioner relied upon these same allegations as the bases of his ineffective assistance claim raised in his 440.10 motion to vacate the judgment.  The trial court denied petitioner's ineffective assistance of trial counsel claim on procedural grounds, pursuant to CPL 440.10(2)(b), holding that "defendant is foreclosed from raising this issue by way of a CPL 440.10 motion since the defendant failed to raise this issue on direct appeal."  <u>See</u> Exh. 10, at 2.  The trial court next stated that it "did undertake a thorough review of the merits of defendant's ineffective assistance of counsel claims and find that they essentially fall under the category of a disagreement with defense strategies or trial tactics and are insufficient to establish an ineffective assistance claim."  <u>See</u> <u>id.</u> at 3.  The Second Department thereafter

18

summarily denied petitioner leave to appeal from the denial of his motion to vacate. See Exh. 12.

Pursuant to CPL § 440.10(2)(b), a court must deny a motion to vacate a judgment when "[t]he judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal."  Thus, the trial court clearly relied on an "independent" state procedural rule in denying petitioner's ineffective assistance of trial counsel claim.  Moreover, the trial court's decision denying petitioner's motion to vacate clearly indicates that the trial court "actually relied on" the state procedural rule as the basis for denying petitioner's ineffective assistance claims.  Further, petitioner did not "substantially comply" with the state procedural rule.  As to the second Cotto guidepost, however, the New York Court of Appeals has stated that, because "[g]enerally, the ineffectiveness of counsel is not demonstrable on the main record, . . . it would be better, and in some cases essential, that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or postconviction proceeding brought under CPL 440.10." People v. Brown, 410 N.Y.2d 852, 853-54, 382 N.E.2d 1149-50, 410 N.Y.S.2d 287 (1978).

In the case at bar, petitioner alleges only one record-based ground in support of his ineffective assistance claim: failure to "guard against inadmissible evidence."  Based upon the analysis above, the trial court's denial of petitioner's ineffective assistance claim–to the extent supported by said record-based ground–rested on an independent and adequate state procedural ground.  Because there is an adequate and independent

19

finding by the trial court that petitioner procedurally defaulted on said portion of his ineffective assistance claim, petitioner must demonstrate in his habeas petition "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.  Petitioner, however, has made no attempt to show cause or prejudice, and there is no indication that this Court's failure to address the merits of said portion of petitioner's ineffective assistance claim would result in a fundamental miscarriage of justice.  Accordingly, I conclude that petitioner's procedural default bars federal review of his ineffective assistance claim to the extent supported by said record-based ground.

On the other hand, petitioner alleges five non-record-based grounds in support of his ineffective assistance claim: failure to call as an expert witness a doctor who treated petitioner's knee injury, failure to introduce petitioner's grand jury testimony as evidence that he could not bend his left knee; failure to call petitioner's mother and ex-girlfriend as "fact witnesses" who would have testified that petitioner could not bend his left knee; failure to introduce photographic evidence of the location where the incident occurred; and failure to investigate the case and prepare for trial.  Based upon the analysis above, the trial court's denial of petitioner's ineffective assistance claim–to the extent supported by said non-record-based grounds–did not rest on an adequate state procedural ground.  Thus, this Court must review the merits of the remaining portion of petitioner's ineffective assistance claim which is supported by said non-record-based allegations.

1. *Strickland standard*

The Supreme Court has stated that "[t]he benchmark for judging any claim of

ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). Under Strickland's two-pronged test, petitioner will prevail on his ineffective assistance claim if he demonstrates (1) that his attorney's performance "fell below an objective standard of reasonableness" and (2) that there is a "reasonable probability" that, but for counsel's error, "the result of the proceeding would have been different." See id. at 694. Both prongs of the test must be met in order for petitioner to prevail. See United States v. Campbell, 300 F.3d 202, 214 (2d Cir. 2002). Moreover, "judicial scrutiny of counsel's performance must be highly deferential . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

Petitioner contends that his trial counsel was ineffective because he failed to introduce petitioner's grand jury testimony as evidence that he could not bend his left knee. However, petitioner testified to that fact on direct examination (456-67) and during cross-examination (479-80). Indeed, on cross-examination, the prosecutor noted that petitioner testified before the grand jury that he can only bend one of his legs (485). Thus, petitioner cannot demonstrate that he was prejudiced by his trial counsel's failure to introduce the grand jury testimony at issue, because the jury ultimately heard the testimony.

Petitioner also argues that his trial counsel was ineffective because he failed to call three witnesses who would have testified that petitioner cannot bend one knee and, therefore, could not have pinned down the victim and attacked him with a crowbar. In

21

the first instance, "[t]he decision to call a witness on behalf of the defense is a tactical

trial strategy and will not constitute a basis for an ineffective assistance of counsel claim

if it is reasonably made."  See United States v. Nersesian, 824 F.2d 1294, 1321 (2d

Cir. 1987).  See also United States v. Eyman, 313 F.3d 741, 743 (2d Cir. 2002) ("A

failure to call a witness for tactical reasons of trial strategy does not satisfy the standard

for ineffective assistance of counsel.").  Here, the prosecution elicited evidence

(consistent with petitioner's statement in his 710.30 notice) that petitioner admitted to

the police, in sum and substance, that he took the shovel and hit the victim with it.

Additionally, petitioner testified that he and the victim were each grabbing the shovel

from the other when the victim fell and petitioner fell on top of him (455-56).  Petitioner

emphasized that he was laying on top of the victim, not sitting on him, and that it was

impossible for him to sit that way because he cannot bend his left knee (456).  Whether

petitioner was kneeling on the victim or laying on the victim is immaterial to the

elements of second degree assault; thus, petitioner fails to rebut the presumption that

defense counsel's failure to call the three witnesses in question was a reasonable

decision.  For the same reason, there is no "reasonable probability" that the witnesses'

testimony would have altered the outcome of the case.

Petitioner's assertions regarding defense counsel's failure to introduce

photographic evidence of the location where the incident occurred is similarly

unavailing.  Petitioner alleges that his ex-girlfriend took photographs of the location

which would have demonstrated to the jury that the victim could not have fallen

backward because the incident occurred on a hill.  However, as stated above, in light of

the prosecution's evidence, including petitioner's statement to the police and his own

testimony, petitioner cannot demonstrate that he was prejudiced by his trial counsel's failure to introduce the photos.

Finally, petitioner's vague and conclusory allegations regarding trial counsel's failure to investigate the case and prepare for trial do not establish that the result of the proceedings would have been different if not for counsel's error–or even that his behavior was erroneous at all.  On the whole, the record clearly indicates that defense counsel's conduct both before and during trial comported with the adversarial nature of a criminal proceeding, and that counsel provided adequate, effective and meaningful assistance.  Accordingly,  I conclude, and respectfully recommend, that petitioner's claim for habeas relief on the ground of ineffective assistance of trial counsel must be dismissed.


## VII.  CONCLUSION

For the foregoing reasons, I respectfully recommend that the instant petition for a writ of habeas corpus be denied in its entirety.


## VIII.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b)(3) of the Rules governing § 2254 proceedings, the parties shall have ten (14) days from receipt of this Report to serve and file written objections to this Report and Recommendation.  If copies of this Report are served upon the parties by mail, the parties shall have thirteen (17) days from receipt of this Report to file and serve written objections.  See Rule 11 of the Rules

## VIII.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b)(3) of the Rules governing § 2254 proceedings, the parties shall have ten (14) days from receipt of this Report to serve and file written objections to this Report and Recommendation.  If copies of this Report are served upon the parties by mail, the parties shall have thirteen (17) days from receipt of this Report to file and serve written objections.  See Rule 11 of the Rules governing § 2254 proceedings; Fed. R. Civ. P. 6(d).  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Kenneth M. Karas at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable Kenneth M. Karas and not to the undersigned.

Dated: April 8, 2010
White Plains, New York

Respectfully Submitted,

GEORGE A. YANTHIS, U.S.M.J.

24